**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

———————————————————— :
HOZAY A. ROYAL,                    :
                                   :       Civil Action No.
            Plaintiff,             :       11-7149 (CCC)
                                   :
      v.                           :
                                   :
EDWARD V. ROCHFORD et al.,         :
                                   :
            Defendants.            :
———————————————————— :
                                   :
HOZAY A. ROYAL,                    :
                                   :       Civil Action No.
            Plaintiff,             :       11-5248 (CCC)
                                   :
      v.                           :
                                   :
MORRIS COUNTY                      :
CORRECTIONAL FACILITY,             :       **O P I N I O N**
                                   :       **APPLIES TO BOTH ACTIONS**
            Defendant.             :
———————————————————— :

**Cecchi**, District Judge.

These matters come before the Court upon the Clerk's receipt of Hozay A. Royal's ("Plaintiff")[1] numerous civil complaints.  For the reasons detailed below, certain claims will be dismissed with prejudice.  One line of claims will be dismissed without prejudice.  Royal v. Morris County Facility, Civil Action 11-5248, will be terminated as duplicative.

———————————————

[1] Plaintiff also operates under the alias "Carlos Johnson." See Royal v. Commonwealth, 851 A.2d 263 (Pa. Ct. Com. Pl. 2004).

1

## I.  **Background**

Plaintiff, an inmate confined at the Morris County Correctional Facility, Morris Township, New Jersey, recently commenced the two above-captioned actions in this District. These two proceedings were not the first legal actions commenced by Plaintiff in this District nor in the federal and state court systems. In fact, Plaintiff has accrued a multitude of criminal convictions and a lengthy record of legal actions related to these convictions,[2] including, inter alia, Commonwealth v. Royal, 639 A.2d 26 (Pa. 1994) (denying Plaintiff's petition for certification as to his criminal proceeding predating 1994); Royal v. Commonwealth, 851 A.2d 263 (Pa. Ct. Com. Pl. 2004) (dismissing Plaintiff's undue forfeiture claim); Royal v. Durison, 319 F. Supp. 2d 534 (E.D. Pa. 2004) (dismissing Plaintiff's Section 1983 action challenging his incarceration), aff'd 254 Fed. App'x 163 (3d Cir. 2007), cert. denied 553 U.S. 1065 (2008) (hereinafter "Durison Chain of Actions"); Royal v. Phila. Adult Prob. & Parole, 2006 U.S. Dist. LEXIS 28938 (E.D. Pa. May 11, 2006) (dismissing Plaintiff's habeas challenges); Royal v. Pennsylvania, 2009 U.S. Dist. LEXIS 128754 (E.D. Pa. Jan. 21, 2009) (denying Plaintiff's coram nobis application), adopted in, 2009 U.S. Dist. LEXIS 10042 (E.D. Pa. Feb. 9, 2009); Royal v. Heckler, 2009 Pa. LEXIS 587 (Pa. 2009)

---

[2] These cases reflect Plaintiff's extensive criminal history, which includes fraud, theft, receipt of stolen goods, escape from custody, use of stolen credit cards, among others.

(denying certification as to Plaintiff's line of state appeals); Royal v. United States, 2009 U.S. Dist. LEXIS 58461 (D.N.J. July 6, 2009) (dismissing Plaintiff's Section 2241 habeas challenges to his state criminal conviction), aff'd 357 Fed. App'x 402 (3d Cir. 2009); Royal v. Pennsylvania, 2009 U.S. Dist. LEXIS 125986 (E.D. Pa. Aug. 5, 2009) (dismissing Plaintiff's Section 2254 habeas challenges); Commonwealth v. Royal, 986 A.2d 1264 (Pa. Super. Ct. 2009) (dismissing Plaintiff's challenge to criminal conviction), appeal denied, 639 A.2d 26 (Pa. 2010); Royal v. Pennsylvania, 2009 U.S. Dist. LEXIS 125986 (Pa. Super. Ct. 2009) (dismissing Plaintiff's petition and other challenges to his conviction); Royal v. Commonwealth Pleas Court of Phila., 2009 U.S. Dist. LEXIS 99962 (E.D. Pa. Oct. 23, 2009) (dismissing Plaintiff's Section 2254 habeas challenges); United States v. Royal, 322 Fed. App'x 226 (3d Cir. Pa. 2009) (affirming the district court decision that dismissed Plaintiff's challenges to his conviction); Royal v. United States, 2009 U.S. Dist. LEXIS 101748 (E.D. Pa. Oct. 29, 2009) (dismissing Plaintiff's Section 2254 habeas challenges), reconsid. denied, 2010 U.S. Dist. LEXIS 1048 (E.D. Pa. Jan. 5, 2010); Royal v. Pennsylvania, 2011 U.S. Dist. LEXIS 88046 (E.D. Pa. May 31, 2011) (dismissing another of Plaintiff's Section 2254 habeas challenges), etc.

In line with these actions, Plaintiff recently commenced one more action; that matter was initiated in this District and was

presided over by this Court.   See Royal v. Rutherford Police Dept. et al., Civil Action No. 11-4862 (CCC) (D.N.J.)("Rutherford Action").

In his Rutherford Action, Plaintiff asserted that

[o]n July 20, 2010, at approximately 3:00 p.m. - 3:30 p.m. in Rutherford, New Jersey, in the back of Lanni's Appliance store; Plaintiff was preparing to receive two (2) televisions. However, before Plaintiff received the televisions he was seized after he ran away, after which, he thought he was being attacked by unidentified Rutherford Police Officers. All of named Defendants in the caption of this case, with the exception of Lt. Feliciano, seized Plaintiff's person without probable cause; seized and searched his vehicle and its contents without a warrant, nor probable cause. Lt. Feliciano, being the ranking police officer on the scene overseen the unlawful actions of all named Defendants actions. Moreover, he announced to the subordinate Defendants to initiate the unconstitutional seizure of Plaintiff's person, and unconstitutional seizure and search of his vehicle and contents.

Rutherford Action, Docket Entry No. 1, at 5 (mistakes in original).

Plaintiff's complaint in the Rutherford Action concluded with a request for relief in the form of monetary damages of $1,000,000.00 from each of the six defendants named in that matter. See id. at 6. This Court dismissed Plaintiff's complaint. See id., Docket Entries Nos. 6 and 7.

This Court examined Plaintiff's claims that he was arrested and that his car was searched without probable cause and explained the governing legal standard. See id., Docket Entry No. 6, at 7-10 (detailing the pertinent aspect of the Fourth Amendment test). Applying that test to Plaintiff's challenges, the Court observed as

4

follows:

> Here, Plaintiff's Complaint paints a picture strongly
> suggesting that a reasonable officer would have believed
> that an offense had been or was being committed by
> Plaintiff: at no point did Plaintiff assert that the
> officers could have observed him legitimately purchasing
> the televisions at issue.  In fact, no statement in the
> Complaint suggests, even vaguely, that he purchased the
> televisions at all or that he was picking up his own
> televisions after a repair, or that he was legitimately
> employed by the store and was picking the televisions up
> in order to make a delivery to a customer.  Moreover,
> Plaintiff does not assert that the officers could have
> observed any interactions between him and the store
> owners indicative of [the] legitimacy of Plaintiff's
> actions; indeed, he does not claim that he ever entered
> the store or that he was in front of the store, where
> pedestrians, the store owners or the police could observe
> his legitimate actions.  Rather, Plaintiff asserts that
> he situated himself at "the back" of the store and was
> merely "preparing to receive two (2) televisions."  He
> had his vehicle nearby for the purposes of this
> unelaborated-upon "receivership." Furthermore, Plaintiff
> states that - when he was about to execute this
> mysterious "receivership" - he saw police officers
> approaching and, for the reasons unspecified in the
> Complaint, he elected to abandon his "receivership"
> efforts and tried to run away.  Simply put, Plaintiff's
> Complaint paints a picture, which - being observed by a
> reasonable officer - would have led that officer to
> believe that Plaintiff was involved (or was about to get
> involved) in criminal activity. Therefore, the Complaint
> . . . does allege probable cause for Plaintiff's arrest
> and search of his vehicle.

Id. at 10-12 (footnotes and citations omitted).

The Court's discussion was accompanied by a number of
footnotes providing relevant information.  One of these footnotes
read:

> Plaintiff asserted that he was arrested in connection
> with the incident that took place on June 20, 2010. In
> connection with that, the Court takes notice of a news
> release dated August 12, 2010, which stated:

Rutherford police officers managed to catch a Philadelphia man who was allegedly using other people's credit cards to purchase electronic equipment in a sting on July 20 in which officers posed as employees at Lanni[] Appliances on Park Avenue.  The investigation began when employees of Lanni[] Appliances called police on July 16 to report that a customer calling himself Tom Henson had twice placed orders using a credit card account that was declined.  The first order came on July 12 for a 46-inch Samsung television.  After the first card was rejected, "Henson" gave the store a second account that was accepted.  A thin black male in his 50's picked up the television on July 14.  Two days later he called back to order two more televisions.  Once again, the first account he used to put down a deposit was declined so he gave a second that was accepted.  At this point, employees at Lanni[] became suspicious and contacted the police that day.  On July 19, police contacted the credit card company and found that several of the cards were being used fraudulently.  On July 20, the man called back to pay the rest of the order.  Once again the first card he gave the store was denied but officers told the employees to tell him it was approved.  Rutherford police officers went to Lanni[] Appliances and posed as employees and waited for the man to arrive.  According to police, at about 7:30 p.m. a van pulled up and the same black male exited and went into the store. When asked by undercover police the man said he was Tom Henson's nephew, according to police.  He was directed to drive around the corner to Chestnut Street where more officers were waiting.  Detective Tom Lewis approached the man, who was later identified as [Plaintiff].  Lewis identified himself as an officer and ordered [Plaintiff] to surrender.  According to police, [Plaintiff] ran for it and Lewis and Detectives James Garner and Sean Farrell pursued on foot.  The officers caught up with [Plaintiff] as he attempted to scale a fence in the alleyway between 33 and 25 Franklin Place.  Farrell and Garner arrested [Plaintiff] and he was taken into custody.  Police report [that] evidence linking [Plaintiff] to further fraud at other stores was found in the van and the investigation is still ongoing. [Plaintiff] was charged with three counts of fraudulent use of a

> credit card, three counts of theft, one count of
> obstruction and one count of resisting arrest.
> Bail was set at $100,000[,] with no[] 10 percent
> option[,] and he was transferred to the Bergen
> County Jail. Police say they also discovered that
> [Plaintiff] was wanted by U. S. Marshals.

> While the Court has no reason to take this information as
> true for the purposes of screening Plaintiff's Complaint,
> the Court notes that, had the scenario depicted in the
> above-quoted news release been, hypothetically,
> established as true, police officers would have had [an]
> abundance of probable cause for both Plaintiff's arrest
> and search of his vehicle.

Id. at 12-13, n.6 (citation omitted).

The Court's analysis, however, closed with the following

sentiment:

> However, this Court – being mindful of Plaintiff's pro se
> status – cannot rule out that Plaintiff might be able to
> elaborate on the circumstances of his "receivership" by
> stating facts showing that a reasonable officer observing
> Plaintiff's actions could not have believed that an
> offense had been or was being committed. Therefore, the
> Court will dismiss Plaintiff's Complaint without
> prejudice to filing an amended pleading detailing such
> facts, that is, if such facts were in existence.

Id. at 14 (emphasis added).

Therefore, the Court granted Plaintiff leave to amend his

pleading in the Rutherford Action, so that Plaintiff could state

the facts of his "receivership," if such facts could plausibly show

that he was arrested and his car was searched without probable

cause.

## II.  Plaintiff's Current Challenges

On September 12, 2011, the Clerk received Plaintiff's

complaint submitted in Royal v. Morris County Correctional

7

Facility, Civil Action No. 11-5248(D.N.J.)("Morris County Action"), which was unaccompanied by Plaintiff's filing fee or in forma pauperis application. See Morris County Action, Docket Entry No. 1. The complaint asserted that, in September 2011, Plaintiff was seeking certiorari from the United States Supreme Court with regard to his proceedings in the Durison Chain of Actions (i.e., with regard to Royal v. Durison, 319 F. Supp. 2d 534 (E.D. Pa. 2004), aff'd 254 Fed. App'x 163 (3d Cir. 2007), cert. denied 553 U.S. 1065 (2008), a chain of actions that closed on May 27, 2008, three and a half years prior to commencement of Plaintiff's Morris County Action).

The complaint also alleged that Plaintiff was seeking to file a motion for reconsideration with the United States District Court for the Eastern District of Pennsylvania ("EDPA") as to the EDPA's dismissal of his Section 2254 habeas petition.[3] Alleging that the facility where Plaintiff was incarcerated allowed him "no more than three (3) hours a week" of law library usage, and that such amount of law library time was "not . . . adequate" to meet what Plaintiff perceived as his legal needs, Plaintiff maintained that his access rights were violated by these limited law library hours. See Morris County Action, Docket Entry No. 1.

Soon thereafter, Plaintiff submitted another civil complaint

---

[3] The EDPA record indicates that Plaintiff did file this motion. See Royal v. Commonwealth, Civil Action 10-7219 (ER) (E.D. Pa.), Docket Entry No. 20.

in this District; that complaint: (a) arrived accompanied by a defective application to proceed in forma pauperis; and (b) gave rise to Royal v. Rochford ("Rochford Action"), Civil Action No. 11-7149 (CCC) (D.N.J.). The complaint asserted that, at the time of filing, Plaintiff was a pro se litigant in a flock of criminal proceedings pending before the Superior Court of New Jersey, Law and Appellate Divisions, as well as in a number of civil proceedings in the EDPA, the United States Supreme Court and in the Rutherford Action in this District. See id. at 1-2. Plaintiff again alleged that: (a) he could use the prison facility law library only three times a week, for one hour during each visit; and (b) such amount of time in the law library was insufficient to meet what Plaintiff perceived as his legal needs. Plaintiff restated his access claims and requested injunctive relief in the form of an order directing the facility to have the law library open five days a week (for many hours, daily) and mandating the facility to install personal computers, copy machines and printers in each "living quarter" of the facility.[4] Id. at 3-4.

Plaintiff's original complaint in the Rochford Action was soon

---

[4] In addition, Plaintiff asserted that his access rights were violated because the telephone use allowed at the facility permitted only collect calls or prepaid calls, while Plaintiff desired to call various attorneys, probation officers, parole officers, judicial clerks, court personnel, state and federal judges, etc., without having the recipients of his calls to accept the charges and without him having to prepay these calls. See Rochford Action, Docket Entry No. 1, at 3-4.

superceded by his first amended complaint, submitted as of right. See id., Docket Entry No. 2. Plaintiff's amended complaint added a request for damages in the amount of $100,000. See id. at 2. Plaintiff also clarified that he sought monetary and injunctive remedies because he was concerned that he might be unable to produce as lengthy or as detailed "briefs" as he desired for the number of legal matters he was maintaining or attempting to maintain in the state courts, the EDPA, this District, and the Supreme Court. See id. at 3.

One week later, Plaintiff submitted a "re-amended" complaint in the Rochford Action; that submission was also as of right. See id., Docket Entry No. 3. In that "re-amended" pleading, Plaintiff re-asserted that his access rights were violated because he was planning to "fil[e] a lengthy amended complaint, including a memorandum of law [in the Rutherford Action, and he believed that such endeavor] require[d] research and typing of the amended complaint." Id. at 2. Reiterating the statements made in his original and amended complaints filed in the Morris County Action and Rochford Action, Plaintiff: (a) reminded this Court, once again, that he was maintaining or attempting to maintain a multitude of legal actions in many courts at the same time; (b) re-alleged, once again, that his access rights were violated because he deemed the amount of time he could spend in the law library insufficient; and (c) repeated, once again, that his access rights

were violated because he could not call some unnamed attorneys, court staff, or judges, without prepaying his calls or having the recipients of his calls agree to accept the phone charges.  See id. at 2-4.

### III. **Pertinent Legal Standards**

For a complete explanation of the standard of review applicable to civil pleadings, Plaintiff should review the Court's opinion in Royal v. Rutherford Police Dep't, 2011 U.S. Dist. LEXIS 133153, at *4-8, which details the guidance provided by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007); Erickson v. Pardus, 551 U.S. 89 (2007); Haines v. Kerner, 404 U.S. 519 (1972); Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008); and Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court notes, however, that a pleading is a statement of facts, not a discussion, recital, or paraphrasing of law.  See Phillips, 515 F.3d at 230-34 ("[A] plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . The threshold requirement of Rule 8(a)(2) [is] that the plain statement [must] possess enough [factual] heft . . . [It is not] sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of the proscribed conduct.'") (citations omitted);

11

accord Iqbal, 129 S. Ct. at 1949-54 ("A claim has facial plausibility [only] when the plaintiff pleads factual content. . . . [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [or to t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

In addition, the Court finds it warranted to remind Plaintiff that Rule 8(a)(2) requires a complaint to be "a short and plain statement of the claim showing that the pleader is entitled to relief,"[5] and Rule 8(d)(1) mandates that "[e]ach allegation must be simple, concise, and direct [and clarifies that n]o technical form is required." Fed. R. Civ. P. 8(a)(2) and (d)(1).

## A.    Access to Law Library

The right of access to the courts is an aspect of the First Amendment right to petition. See McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981). The Supreme Court also found that "[t]he constitutional guarantee

---

[5] See Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (affirming dismissal of pro se civil rights complaint naming numerous defendants, setting forth numerous causes of action, and numbering 15 pages and 88 paragraphs); see also McNeil v. United States, 508 U.S. 106, 113 (1993) (procedural rules in civil litigation should not be interpreted so as to excuse mistakes by those proceeding without counsel); Burks v. City of Phila., 904 F. Supp. 421, 424 (E.D. Pa. 1995) (striking pleading that was "gross departure from the letter and the spirit" of Rule 8 in failing to contain short and plain statement of claims).

of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights [associated with their conditions of confinement]." Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Hudson v. Palmer, 468 U.S. 517, 523 (1984); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).

In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis removed).

Thus, to state a cognizable access to the courts claim, a complainant must demonstrate that: (1) (s)he suffered an "actual

13

injury" (i.e., that (s)he lost an opportunity to pursue a non-frivolous claim); and (2) (s)he has no other remedy, save the present civil rights suit, that can possibly compensate for the lost claim. See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). Correspondingly, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id. at 205-06 (citing Christopher v. Harbury, 536 U.S. 403, 416-17 (2002)); see also Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997); Hoffenberg v. Bumb, 2011 U.S. App. LEXIS 11741, at *9 (3d Cir. N.J. June 9, 2011).

## B.   Phone Calls

Inmates have a right protected under the First Amendment to communicate with their family and friends by reasonable means. See Owens-El v. Robinson, 442 F. Supp. 1368, 1386 (W.D. Pa. 1978). Inmates' ability to communicate with their lawyers is additionally protected by their constitutional right of access to the courts and may implicate the Sixth-Amendment right to assistance of counsel in criminal proceedings. See Aswegan v. Henry, 981 F.2d 313 (8th Cir. 1992)(analyzing telephone use as access-to-courts issue); Owens-El v. Robinson, 442 F. Supp. 1368, (applying Sixth Amendment standards to telephone use restrictions).

However, it is established that a prisoner "has no right to unlimited telephone use." Washington v. Reno, 35 F.3d 1093, 1100

14

(6th Cir. 1994) (quoting <u>Benzel v. Grammer</u>, 869 F.2d 1105, 1108
(8th Cir.), <u>cert. denied</u>, 493 U.S. 895, 110 S. Ct. 244, 107 L. Ed.
2d 194 (1989)).  Rather, an inmate's telephone access is "subject
to rational limitations in the face of legitimate security
interests of the penal institution." <u>Id.</u> (quoting <u>Strandberg v.
City of Helena</u>, 791 F.2d 744, 747 (9th Cir. 1986)).
Correspondingly, an inmate's right to communicate even with his/her
legal counsel is not unlimited.  <u>See Ingalls v. Florio</u>, 968 F.
Supp. 193, 203-04 (D.N.J. 1997) ("[L]imited access to telephone
calls . . . is not a constitutional violation so long as inmates
can communicate with their counsel in writing or in person by
visits."); <u>Aswegan v. Henry</u>, 981 F.2d at 314 (upholding a state
penitentiary's policy of prohibiting prisoners from making toll-
free telephone calls, even to their attorneys, because the
prisoners had alternative methods of exercising the right to access
the courts, and had not alleged any irreparable harm or prejudice
from the policy).  Hence, if an inmate has an alternative method to
communicate freely and privately with his counsel, it is less
likely that the restrictions on telephone use will rise to the
level of a constitutional violation.[6] <u>See Ingalls</u>, 968 F. Supp at

---

[6] The constitutional protections applicable to inmates'
rights to communicate with entities other than their counsel or
their judge are weak, even if these other entities have certain
connections with the court system or the inmate's proceedings.
<u>See McFarland v. Luttrell</u>, 1995 U.S. App. LEXIS 7871, at *11 (6th
Cir. Apr. 5, 1995) ("[The inmate's] claim that defendants . . .
violated his right to access to the courts by not permitting him

203-04; Aswegan, 981 F.2d at 314; see also Bell v. Wolfish, 441
U.S. 520, 551-52 (1979) ("[T]here are alternative means of
obtaining reading materials that have not been shown to be
burdensome or insufficient . . . the available alternative means of
communication . . . [is] a relevant factor in a case . . . where we
are called upon to balance First Amendment rights against
legitimate governmental interests.").

"In sum, three questions relevant to issue of telephone access
to counsel and the courts are (1) whether [the prisoner] has
alleged facts giving rise to an inference that no legitimate
penological interest was served by the . . . Defendants' actions,
(2) whether he has sufficiently alleged that the . . . Defendants'
actions caused him an 'actual injury,' and (3) whether he had
alternative avenues through which he could communicate with his
attorneys and the courts." Aruanno v. Main, 2010 U.S. Dist. LEXIS
3268, at *29 (D.N.J. Jan. 15, 2010).

## IV.  **Plaintiff's Allegations Fail to State a Cognizable Claim**

### A.  **Access to Law Library**

Plaintiff's claims in both his Morris County Action and in the
Rochford Action can be summarized in a single statement: that

---

to call his probation office is similarly baseless. [The inmate]
cites to no authority for the proposition that he is entitled to
access to his probation office, nor does he allege that he was
unable to communicate with his probation office by other means,
or that any ongoing litigation was adversely affected"). Thus,
an inmate's ability to execute his/her communications by mail
satisfy the constitutional safeguards. See id.

Plaintiff finds the amount of law library time allowed to him insufficient. However, this cannot serve as a valid basis for his claims. In order to support such a claim, Plaintiff must allege facts: (1) showing that he suffered an "actual injury" because he lost an opportunity to pursue a non-frivolous claim as a result of such limited law library hours (and he must detail both the factual predicate and the legal proposition supporting that lost non-frivolous claim); and (2) showing that he has no other remedy, save his instant action, that can possibly compensate him for the loss of that non-frivolous claim. See Christopher, 536 U.S. at 416-17; Lewis, 518 U.S. at 348-51; Monroe, 536 F.3d at 205; Oliver, 118 F.3d at 177-78. Plaintiff's pleadings in the Morris County Action and Rochford Action did not include any statements to that effect.

Plaintiff's assertion that his efforts to file a motion in Royal v. Commonwealth, Civil Action 10-7219 (ER) (E.D. Pa.), were obstructed by the limited law library hours is to no avail, since such motion was indeed filed. See id., Docket Entry No. 20. Plaintiff also failed to allege that he was unable to include a non-frivolous claim in that motion due to the lack of law library hours.[7]

---

[7] In Royal v. Commonwealth, Civil Action 10-7219 (ER) (E.D. Pa.), Plaintiff's claims arose from the fact that he "was arrested for retail theft in Philadelphia on October 3, 1990 [but] failed to appear for a scheduled pre-trial conference in December, 1990, and was located again by the Philadelphia courts only in April, 1991, when he was detained in Delaware County Prison on a different matter. [That, however, did not stop

Similarly, Plaintiff's application for certiorari from the United States Supreme Court with regard to his <u>Durison Chain of Actions</u> was likely denied for reasons unrelated to the limited law library hours, as Plaintiff had been released from confinement during this period (<u>i.e.</u>, the period when Plaintiff performed, <u>inter alia</u>, the "receivership" of televisions underlying his claims in the <u>Rutherford Action</u>). Thus, he could have dedicated all the time he wished to his efforts in researching and drafting his legal claims at any law library.[8]

_____

Plaintiff from] mov[ing] for dismissal of his [Philadelphia] case under Pennsylvania's speedy trial rule." <u>Id.</u>, Docket Entry No. 13, at 1. After being found guilty in that Philadelphia case and incarcerated, Plaintiff filed direct appeal and sought post-conviction relief; being conclusively released from confinement, he instituted his <u>Royal v. Commonwealth</u>, Civil Action 10-7219 (ER) (E.D. Pa.), habeas proceedings, which were dismissed for failure to meet the "in custody" requirement. <u>See id.</u>, Docket Entry No. 13 (explaining, in great detail, that the "in custody" requirement is jurisdictional and bars any habeas action filed after the inmate was released from confinement). Magistrate Judge Jacob P. Hart recommended dismissal of Plaintiff's habeas petition, and that recommendation was adopted by District Judge Eduardo C. Robreno. <u>See id.</u>, Docket Entry No. 19. Plaintiff now filed a motion seeking Judge Robreno's reconsideration on the grounds that Plaintiff should have been granted equitable tolling as to his statute of limitations, <u>see id.</u>, Docket Entry No. 20, even though the statute of limitations issue was, at any point, considered by Judges Robreno and Hart or served as a basis for their ruling. <u>See id.</u>

[8] Read together with the facts of <u>Royal v. Commonwealth</u>, Civil Action 10-7219 (ER) (E.D. Pa.), the chain of events underlying Plaintiff's <u>Durison Chain of Actions</u> suggests a pattern in Plaintiff's criminal activities and a pattern in his mode of litigation. Specifically, in <u>Durison Chain of Actions</u>,

[o]n or about March 26, 1983, [P]laintiff was arrested and detained for retail theft. By posting bail,

Even more glaring are the deficiencies of Plaintiff's claims

---

[P]laintiff was released from detention on April 14, 1983 and a preliminary hearing was scheduled for April 28, 1983.  Because [P]laintiff failed to appear for the scheduled preliminary hearing, a bench warrant was issued on April 28, 1983.  On or about July 29, 1984, [P]laintiff was arrested for a separate retail theft charge, and rearrested pursuant to the bench warrant.  On November 15, 1983, [P]laintiff entered a guilty plea to the two retail theft charges and a . . . charge of failing to appear for a court appearance.  On or about January 25, 1984, [P]laintiff was sentenced . . . .  Plaintiff served the maximum term of detention . . . and was released on or about January 25, 1987 [on] probation.  During the probation period, [P]laintiff was arrested on new charges and detained on February 16, 1999. . . . [P]laintiff was sentenced on October 12, 1999 . . . for violating the terms of his probation.

Royal v. Durison, 319 F. Supp. 2d at 536.

Plaintiff then challenged, in a § 1983 action, denial of jail time credits as to his probation violation sentence, paraphrasing his claim in terms of the Eighth Amendment.  See id. at 536-37.  The Court of Appeals pointed out that Plaintiff's § 1983 challenges were barred by Heck v. Humphrey, 512 U.S. 477 (1994), and Williams v. Consovoy, 453 F.3d 173 (3d Cir. 2006), since Plaintiff was effectively trying to invalidate part of his sentence without first obtaining a state order or federal habeas ruling that such part of Plaintiff's sentence was invalid.  See Royal v. Durison, 254 Fed. App'x 163.  Maintaining that his claims were not barred by Heck and Williams, Plaintiff sought and was denied certiorari by the Supreme Court on May 27, 2008.  See Royal v. Durison, 553 U.S. 1065.  Three years later, Plaintiff filed a motion requesting the Court of Appeals to recall its mandate in Royal v. Durison, 254 Fed. App'x 163, as erroneous, and re-stated his position that his claims should not have been deemed barred by Heck and Williams.  See Royal v. Durison, USCA Index No. 05-1036, Docket Entry dated 4/5/2011.  Having his application for recall denied, Plaintiff filed his current round of petition for certiorari with the Supreme Court, asserting the same claims.

associated with his position that he is being denied access to the courts due to his inability to "research" and "type" his amended complaint in the <u>Rutherford Action</u>.   In that matter, this Court allowed Plaintiff to file an amended complaint in order to assert facts, if any, which show that the circumstances of Plaintiff's "receivership" of televisions were such that a reasonable police officer would not have found probable cause for Plaintiff's arrest and search of his car.

The Court does not find persuasive Plaintiff's assertion that he needs access to the law library to conduct research in connection with his amended pleading in the <u>Rutherford Action</u>, as Plaintiff does not require access to a law library in order to locate additional facts related to his claims.[9]   <u>Accord</u> <u>Rutherford Action</u>, Docket Entry No. 6, at 14 (explaining the same).   Moreover, the Court does not agree that Plaintiff requires law library access to type his amended complaint in the <u>Rutherford Action</u>, since no

---

[9] Plaintiff's desire to produce a "lengthy" amended complaint: (a) has no basis in any order or opinion issued by this Court; and, moreover (b) would be an outright violation of Rule 8 requirement directing Plaintiff's amended complaint to be a "short and plain" statement.   Analogously, the Court's leave to amend granted in the <u>Rutherford Action</u> did *not* include any permission to file a "memorandum of law."   Moreover, the Court expressly pointed out to Plaintiff that all <u>pro</u> <u>se</u> submissions, including Plaintiff's submissions, are construed by the courts liberally and with a measure of tolerance, meaning that the courts read into the <u>pro</u> <u>se</u> litigant's pled facts all viable legal claims that might support the asserted factual predicate. <u>See</u> <u>Royal v. Rutherford Police Dep't</u>, 2011 U.S. Dist. LEXIS 133153, at *4-8 (explaining same to Plaintiff).

statement made by this Court with regard to the <u>Rutherford Action</u>
or any other action commenced by any <u>pro se</u> litigant suggested that
the litigant's submissions must be typed rather than hand-printed.[10]
Therefore, Plaintiff's assertion that his access rights were
violated by the law library hours with regard to Plaintiff's
execution of an amended complaint in the <u>Rutherford Action</u> is
devoid from any factual predicate and, hence, frivolous.

Finally, Plaintiff's assertions that his access rights were
violated, as a result of limited law library hours, with regard to
Plaintiff's criminal proceedings pending before the Superior Court
of New Jersey, Law and Appellate Divisions, fail to meet the
requirements posed by the <u>Christopher</u>, <u>Lewis</u>, <u>Monroe</u> and <u>Oliver</u>
cases. <u>See</u> Discussion, <u>supra</u> at 14.

However, giving Plaintiff the benefit of the doubt, this Court
will dismiss that narrow line of Plaintiff's challenges without
prejudice. Plaintiff is granted leave to submit an amended
complaint, stating access to the court claims, solely with regard
to his allegedly pending proceedings in the Superior Court of New
Jersey, Law and Appellate Divisions. Plaintiff's amended complaint
shall (a) expressly identify each proceeding, indicating the court,
the index number, and the parties involved; (b) state each non-

---

[10] Indeed, Plaintiff's pleadings in the <u>Morris County Action</u>
and <u>Rochford Action</u> were all hand-printed and this fact did not
prevent this Court from examining Plaintiff's submissions in the
instant Opinion and accompanying Order.

frivolous claim that Plaintiff lost in those actions due to the limited law library hours, specifying both the factual predicate and the legal position of each; and (c) state the exact remedy lost, with an explanation why Plaintiff's lost rights can be vindicated only by means of the proceedings at bar rather than by applications to state courts or by federal habeas filings.

**B.    Phone Calls**

Plaintiff's claims asserting that his facility did not allow him phone calls (to unspecified attorneys, probation officers, pre-trial officers, clerk of the court staff, judicial clerks, etc.), unless Plaintiff prepaid those phone calls or the persons being called accepted collect charges, will be dismissed with prejudice.

The issue of "legal phone calls," in the sense of phone calls to attorneys representing Plaintiff, is factually inapposite to Plaintiff's claims since he expressly stated that he has been proceeding pro se in *all* his legal cases implicated in the complaints submitted in the Rochford Action and Morris County Action.

Furthermore, Plaintiff's claims that he was denied calls to unspecified probation officers, pretrial officers, judicial and court staff, etc., implicate no constitutional protection unless these calls were sought to be placed in connection with Plaintiff's legal matters. Even if this Court were to hypothesize that these calls were, in fact, sought to be placed in connection with

Plaintiff's legal matters, Plaintiff's allegations fail to state a cognizable claim because: (a) these allegations do not suggest that Plaintiff was prevented from contacting these unspecified probation officers, pretrial officers, judicial and court staff, etc. by alternative means, e.g. by mail; and (b) the record in the two above-captioned matters, as well as in the <u>Rutherford Action</u>, <u>Royal v. Commonwealth</u>, Civil Action 10-7219 (ER) (E.D. Pa.), proceeding, the <u>Durison Chain of Actions</u>, indicate that Plaintiff could and did mail and could and did receive numerous communications with regard to his pending actions from the judges and court staff.

Since Plaintiff has alternative means of communication, and the facility where Plaintiff is confined has a legitimate penological interest in preventing abuse of its telephonic services by inmates who desire to call, leisurely, every administrative or judicial employee they wish, Plaintiff's claims challenging the requirement to have his phone calls prepaid or accepted by persons being called collect is facially without merit. Therefore, it will be dismissed with prejudice.

## V.   <u>Plaintiff's Duplicative Proceedings Will Be Terminated</u>

Since Plaintiff's <u>Morris County Action</u> and <u>Rochford Action</u> asserted identical factual predicates and legal challenges, these actions are duplicative.   One of these actions should be terminated.

> The power of a federal court to prevent duplicative
> litigation is intended "to foster judicial economy and

the 'comprehensive disposition of litigation,'" <u>Curtis v. Citibank, N.A.</u>, 226 F.3d 133, 138 (2d Cir. 2000) (quoting <u>Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.</u>, 342 U.S. 180, 183 (1952)), and "to protect parties from 'the vexation of concurrent litigation over the same subject matter.'" <u>Id.</u> (quoting <u>Adam v. Jacobs</u>, 950 F.2d 89, 93 (2d Cir. 1991)).

<u>Porter v. NationsCredit Consumer Disc. Co.</u>, 2003 Bankr. LEXIS 933, at *33 (Bankr. E.D. Pa. 2003).

Since Plaintiff was already granted <u>in forma pauperis</u> status for the purposes of his <u>Rochford Action</u>, this Court finds it warranted to terminate Plaintiff's <u>Morris County Action</u> without directing the Clerk to file Plaintiff's complaint in that matter and without ordering assessment of a filing fee. The Court will supplement its order issued in the <u>Rochford Action</u>, Docket Entry No. 6, which granted Plaintiff <u>in forma pauperis</u> status, by a directive for collection of filing fee with regard to that matter and filing of Plaintiff's "re-amended" complaint.

## VI. <u>Conclusion</u>

For the foregoing reasons, Plaintiff's <u>Morris County Action</u> will be terminated as duplicative, without filing of Plaintiff's complaint and collection of filing fee. Plaintiff's "re-amended" complaint in the <u>Rochford Action</u> will be ordered filed, and a filing fee will be assessed with regard to that matter. Plaintiff's claims in that matter will be dismissed.

Specifically, Plaintiff's claims asserting undue denial of phone calls will be dismissed with prejudice. Plaintiff's claims

asserting denial of access to the courts with regard to Plaintiff's Rutherford Action, Royal v. Commonwealth, Civil Action 10-7219 (ER) (E.D. Pa.), proceeding and the Durison Chain of Actions will also be dismissed with prejudice.  Limited leave to amend will issue as to Plaintiff's access claims raised with regard to Plaintiff's proceedings allegedly pending before the Superior Court of New Jersey, Law and Appellate Divisions.

The Clerk will be directed to docket this Opinion and accompanying Order in the Rutherford Action; such docketing will be for informational purposes only.

An appropriate Order accompanies this Opinion.

**Claire C. Cecchi,**
**United States District Judge**

Dated: January 27, 2012